**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION**

FILED
CLERK, U.S. DISTRICT COURT
OCT – 4 2017
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

UNITED STATES OF AMERICA,
*ex rel.* David Nutter, M.D., and **DAVID NUTTER, M.D.**, individually,

Plaintiffs,

v.

**SHERIF F. KHALIL, M.D., BEAVER MEDICAL GROUP, L.P., THE BEAVER MEDICAL CLINIC, INC., EPIC MANAGEMENT, L.P.** and **EPIIC MANAGEMENT, INC.,**

Defendants.

DOCKET NO.:

ED CV17-02035 PSG (KKx)

**COMPLAINT AND DEMAND FOR JURY TRIAL "FILED UNDER SEAL PURSUANT TO THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. §§ 3729 *et seq.*"**

LODGED

2017 OCT –4  AM10:29
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY

FEE PAID

False Claims

Plaintiff and *qui tam* Relator David Nutter, M.D., by and through his undersigned counsel Law Office of Mann & Elias and The JTB Law Group, LLC, alleges of personal knowledge as to his own observations, and on information and belief as to all else, as follows:

**I.
PRELIMINARY STATEMENT**

1.     Relator David Nutter, M.D., brings this *qui tam* action on behalf of the United States of America (the "United States") under the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), and the common law to recover treble the damages actually sustained by, and civil penalties and restitution owed to, the

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

United States as a result of a complicated, long-term scheme by Sherif F. Khalil, M.D., Beaver Medical Group, L.P., The Beaver Medical Clinic, Inc., EPIC Management, L.P., and EPIIC Management, Inc. (collectively "Defendants") to commit fraud.

2.     Defendants have defrauded the United States by knowingly (a) falsely diagnosing patients enrolled in Medicare Advantage plans; (b) submitting false diagnoses on claims forms to the Medicare Advantage plans, thereby inflating the patients' respective risk adjustment factor ("RAF") scores; and (c) causing the Medicare Advantage plans, in turn, to submit erroneous risk adjustment data to the Centers for Medicare & Medicaid Services ("CMS"), which then (d) caused CMS to increase the Medicare Part C capitation payments it made to the Medicare Advantage plans and ultimately (e) enabled Defendants to obtain higher levels of reimbursement for the care they provided to these patients.

3.     In order to effectuate their scheme, Defendants knowingly (a) caused to be presented or presented false claims to Medicare; (b) made or caused to be made or used false records or statements material to these false claims; and (c) conspired to cause these claims to be presented and/or these records or statements to be made or used, causing Medicare to pay several millions of dollars in increased Part C capitation payments that should not have been paid.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

4.     This Complaint has been filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2). It will not be served on Defendants unless and until the Court so orders.

5.     A copy of the Complaint, along with written disclosure of substantially all material evidence and information that Relator possesses, has been served contemporaneously herewith on the Attorney General of the United States pursuant to 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4(d).

## II.
## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the FCA, a federal statute.

7.     The Court has subject matter jurisdiction over the common law claim pursuant to 28 U.S.C. § 1345.

8.     The Court has personal jurisdiction over Defendants because Defendants (a) are residents of, and are licensed to transact and do transact business in, this District; and (b) have carried out their fraudulent scheme in this District.

9.     Venue is proper in this District pursuant to 31 U.S.C. §§ 3732(a) and 28 U.S.C. § 1391 (b)(2), because Defendants can be found in, are licensed to do business in, and transact or have transacted business in this District, and the events

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

and omissions that give rise to these claims have occurred in this District. This District is the locus of the fraud.

10.    The Complaint has been filed within the period prescribed by 31 U.S.C. § 3731(b).

## III.
## NO PUBLIC DISCLOSURE;
## DIRECT AND INDEPENDENT KNOWLEDGE
## OF VIOLATIONS OF THE FALSE CLAIMS ACT

11.    There has been no public disclosure, relevant under 31 U.S.C. § 3730(e), of the "allegations or transactions" in this Complaint.

12.    Relator makes the allegations in this Complaint based on Relator's own knowledge, experience and observations.

13.    Relator is the original source of the information on which any allegation herein might be based, has direct and independent knowledge of such information, and has voluntarily disclosed such information to the United States before filing this action.

## IV.
## THE PARTIES

**A.    Plaintiff the United States**

14.    Plaintiff the United States of America brings this action by and through Relator David Nutter, M.D. At all times relevant to this Complaint, the United States, acting through its agency CMS, has made Medicare Part C

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

capitation payments to certain Medicare Advantage plans based on risk adjustment data collected from Defendants. Thus, the United States brings this action on behalf of its agencies, CMS and HHS, and on behalf of the Medicare program.

**B.    Plaintiff and Relator David Nutter, M.D.**

15.    Relator David Nutter, M.D., also brings this action on behalf of himself and the United States.

16.    Relator is a citizen of the United States and, at all relevant times, has been a resident of San Bernardino County, California.

17.    Relator was formerly employed by Defendant Beaver Medical Group, L.P. ("BMG"), as a physician.

18.    Relator was a family medicine specialist at BMG's main office, located at 2 W. Fern Ave., Redlands, CA 92373.

19.    Relator and Defendant Sherif F. Khalil, M.D. were co-workers at BMG, and both served as members of the Practice's Coding & Compliance Committee.

20.    Relator has both direct and second-hand knowledge concerning Defendants' violations of the FCA and other federal statutes and regulations.

**C.    Defendants**

21.    Defendant Sherif F. Khalil, M.D. ("Khalil"), is a resident of San Bernardino County, California.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

22.     Khalil is an internal medicine doctor who was employed by BMG at its Beaumont office, located at 81 S. Highland Springs Ave, Beaumont, CA 92223.[1]

23.     Khalil is listed as the Chief Financial Officer of Defendant The Beaver Medical Clinic, Inc. ("BMC, Inc.") in its Statement of Information filed with the California Secretary of State on September 23, 2013.[2]

24.     Khalil is listed as one of the Directors of BMC in its Statement of Information filed with the California Secretary of State on April 17, 2017.

25.     Defendants BMG, BMC, EPIC Management, L.P. ("EPIC") and EPIIC Management, Inc. ("EMI") are entities formed and existing under the laws of the State of California.[3]

26.     BMC is the General Partners of BMG.

27.     BMC is a shareholder of EMI.

28.     EMI is the General Partner of EPIC.

29.     BMG is a Limited Partner of EPIC.

30.     BMG purports to be "one of the most comprehensive medical groups in Southern California with over 200 doctors in 25 specialties."[4]

---

[1] *See* Beaver Medical Group website: https://www.beavermedicalgroup.com/doctorfinder/bios/s_khalil.aspx (last accessed August 13, 2017).
[2] *See* California Secretary of State website: https://businesssearch.sos.ca.gov/ (last accessed September 19, 2017).
[3] *Id.*
[4] *See* Beaver Medical Group website: https://www.beavermedicalgroup.com/aboutus/default.aspx (last accessed August 13, 2017).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

31.    EPIC provides management and consulting services to BMG and maintains a corporate office at 1615 Orange Tree Lane, Redlands, CA 92374.[5]

## V.
## MEDICARE PART C CAPITATION PAYMENTS / RISK ADJUSTMENT

32.    Medicare is a federally-funded health care program primarily serving people age 65 or older. The two original components of Medicare, created in Title XVIII of the Social Security Act of 1965, are Part A, which covers inpatient hospital costs and related services, and Part B, which covers outpatient health care costs, such as physicians' fees.[6]

33.    In 1997, Congress passed the Balanced Budget Act ("BBA") which, *inter alia*, established Part C of the Medicare program. The program was renamed the Medicare Advantage Program under the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (the "MMA").[7]

34.    Under Medicare Advantage, CMS is authorized to contract with private insurers to offer a variety of health plan options for beneficiaries, including coordinated care plans such as Health Maintenance Organizations ("HMOs"), Provider Sponsored Organizations, Preferred Provider Organizations, and other types of plans not pertinent here (collectively, "Medicare Advantage Plans" or

---

[5] *See* EPIC website: https://www.epicmanagementlp.com/about/default.aspx (last accessed August 13, 2017).
[6] Medicare Parts A and B are not directly at issue here; neither is Part D, which subsidizes the cost of prescription drugs.
[7] Enacted in December 2003. *See* Medicare Managed Care Manual, Chapter 7 – Risk Adjustment, *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs-Items/CMS019326.html.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

"MAPs"). MAPs provide all Medicare Parts A and B benefits, and most offer additional benefits as well.[8]

35.    CMS funds MAPs using a process established in the MMA.[9] Pursuant to this process, CMS pays a monthly "capitation" payment to each MAP for each of that plan's enrolled beneficiaries.[10] The MAP, in turn, pays the capitation payment to the enrollee's doctor or medical practice, after retaining a percentage fee for administration.[11]

36.    CMS determines the amount of each enrollee's capitation payment based on a Hierarchical Condition Category ("HCC") risk adjustment model, which incorporates a set of "risk factors" including medical diagnoses, age, gender, severity of illness, etc., to yield an overall RAF score. A beneficiary's RAF score is thus a measure of that individual's expected health status and, therefore, a proxy for the expected cost of that individual's care.[12] The RAF score is computed for

---

[8] *See* CMS website: https://www.cms.gov/Medicare/Health-Plans/HealthPlansGenInfo/.
[9] *See* Medicare Managed Care Manual, Chapter 8 - Payments to Medicare Advantage Organizations, *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs-Items/CMS019326.html.
[10] *Id.*, Sec. 10 "General Payment Rules."
[11] The 1997 BBA and later legislation required CMS to adjust per-beneficiary capitation payments annually with a risk adjustment methodology using diagnoses to measure relative risk due to health status instead of just demographic characteristics such as age, sex, and Medicaid eligibility. Risk adjustment using diagnoses provides more accurate payments for Medicare Advantage plans, with higher payments for enrollees at risk for being sicker, and lower payments for enrollees predicted to be healthier, thereby decreasing incentives for health plans to avoid enrolling sicker beneficiaries. *Id.*, Sec. 50 "Adjustment to MA Payments Under the CMS-HCC Risk Adjustment Models – Risk Scores Adjust Payments."
[12] *See id.*

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

each beneficiary for a given year and applied prospectively. The RAF score generally follows the beneficiary for one calendar year.[13]

37.    Since RAF scores are calculated for all Medicare beneficiaries (including new enrollees), information is immediately available for payment purposes as beneficiaries join a MAP or move among MAPs; therefore, when a MAP forwards beneficiary enrollment information to CMS, CMS then sends the RAF scores for the beneficiary to the MAP, as well as the appropriate payment.[14]

38.    CMS requires MAPs to collect hospital inpatient, hospital outpatient, and physician RAF data and submit the data to CMS no less frequently than on a quarterly basis for calculation of the RAF scores that will, in turn, be used to calculate CMS's prospective payments to the Medicare Advantage plans.[15]

39.    According to 42 CFR 422, MAPs must collect and submit to CMS the data necessary to characterize the context and purposes of each service provided to a Medicare enrollee.[16]

40.    At all relevant times, BMG's central office staff collected this data from patients' records and provided it to the MAPs in which those patients were enrolled. BMG's doctors, including Dr. Khalil, did not provide their patients' diagnoses and other data directly to the MAPs.

---

[13] *Id.*

[14] *Id.*

[15] *See* Medicare Managed Care Manual, Chapter 7 – Risk Adjustment, *supra*, Sec. 120 "Operations."

[16] *Id.*, Sec. 120.1 "Data Collection to Support Risk Adjustment."

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

# VI.
## DEFENDANTS' FRAUDULENT ACTS

41.    Khalil currently has approximately 1,000 or more Medicare patients, most of whom are enrolled in Medicare Advantage HMOs.

42.    Khalil has routinely and extensively made false diagnoses on his patients' charts and/or records, thereby increasing his patients' RAF scores.

43.    The false diagnoses include but are not limited to malnutrition, peripheral vascular disease ("PVD"), hemiparesis, pulmonary hypertension, chronic obstructive pulmonary disease ("COPD"), and diabetic polyneuropathy.

44.    Khalil diagnosed as malnourished patients whose Body Mass Index scores were well above the clinical threshold for such a diagnosis.

45.    Patients whose FloChec™[17] test results were normal were diagnosed with PVD.

46.    Patients were diagnosed with hemiparesis, pulmonary hypertension, diabetic polyneuropathy, and COPD when there was no support or justification for any such diagnosis.

47.    New patients often have new diagnoses added to their charts with no support or justification, even on their first visit.

---

[17] FloChec™ "is a device that performs bilateral, multiple-level, non-invasive physiologic studies of upper and lower extremity arteries." http://www.footcarewiz.com/index.php?route=product/category&path=68_71

10

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

48.   As a result of these false diagnoses, most if not all of Khalil's Medicare patients have inflated RAF scores.

49.   Once a false diagnosis is entered in a patient's records, unless otherwise audited, it becomes part of the data submitted by that patient's MAP for the calculation of that patient's capitation rate.

50.   Khalil, BMG and its management company EPIC routinely submitted the risk adjustment data including the patients' false diagnoses to their patients' MAPs, which in turn submitted the false data to CMS. This caused CMS to increase the capitation payments made to the MAPs, which in turn increased payments to BMG.

51.   Moreover, the aggregate RAF scores of each doctor's patients were considered by BMG in determining the doctors' compensation during certain periods. Thus, by inflating his patients' RAF scores through false diagnoses, Khalil increased the compensation he personally received from BMG.

52.   Khalil, BMG and EPIC have thus caused CMS to make Part C capitation payments to Medicare Advantage plans, and through those plans to Defendants, that it would not have made if CMS had been aware of the falsity of Defendants' risk adjustment data and claims.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## VII.
## THE STATUTORY FRAMEWORK – FEDERAL FALSE CLAIMS ACT

53.    The False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), reflects Congress's objective to "enhance the Government's ability to recover losses as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (1986). As relevant here, the FCA establishes treble damages liability for an individual or entity that:

a. "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A);

b. "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, *id.* § 3729(a)(1)(B); or

c. "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," *id.* § 3729(a)(3)(1986), and, as amended, 31 U.S.C. § 3729(a)(1)(C).

54.    "Knowing," within the meaning of the FCA, is defined to include reckless disregard and deliberate indifference. *Id.*

55.    In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or each false claim.[18]

---

[18] Pursuant to the Federal Civil Penalties Inflation Adjustment Act (the "2015 Civil Penalties Amendments," 28 U.S.C. § 2461), FCA civil penalties are: (i) $10,957 to $21,916 for assessments made after February 3, 2017, whose associated violations occurred after November 2, 2015; (ii) $10,781 to $ 21,563 for assessments made after August 1, 2016, and on or before February 3, 2017, whose associated violations occurred after November 2, 2015; and (iii) $5,500 to $11,000 for assessments made before August 1, 2016, and for any violations that occurred prior to November 2, 2015. *See* 28 CFR Part 85 – Civil Monetary Penalties Inflation Adjustment, *available at* https://www.ecfr.gov/cgi-bin/text-idx?rgn=div5&node=28:2.0.1.1.37.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

56.     Finally, the FCA also provides for payment of a percentage of the United States' recovery to a private individual who brings suit on behalf of the United States (the "Relator") under the FCA. *See* 31 U.S.C. § 3730(d).

## VIII.
## FIRST CLAIM FOR RELIEF
## FEDERAL FALSE CLAIMS ACT:
## CAUSING THE PRESENTATION OF FALSE CLAIMS

57.     Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

58.     Throughout the statutory period, Defendants knowingly falsely diagnosed MAP enrollees with diseases and/or conditions they did not have or for which they had not been treated that year; submitted risk adjustment data and claims with unjustified diagnosis codes to those patients' MAPs, which data were in turn submitted by the plans to CMS; and thereby caused CMS to make excessive Part C capitation payments to those MAPs, which excess was ultimately passed on to Defendants.

59.     BMG's doctors, including Dr. Khalil, did not provide their patients' data directly to the MAPs. Rather, at all relevant times, BMG's central office staff collected the data at issue, including Khalil's false diagnosis codes, from patients' records and provided it to the MAPs, who then provided it to CMS.

60.     Defendants knowingly presented false or fraudulent risk adjustment data to the MAPs, who then submitted that data to CMS. This false risk adjustment

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

data and claims presented by Defendants ultimately caused the United States, through its agency CMS and that agency's Medicare program, to pay out sums that it would not have paid if CMS had been aware of the falsity of Defendants' risk adjustment data and claims. Defendants therefore caused false or fraudulent claims for payment to be presented to the Government, in violation of 31 U.S.C. § 3729(a)(1)(A).

61.     Each false or fraudulent claim presented or caused to be presented to the United States is a separate violation of the FCA.

62.     By reason of the false or fraudulent claims that Defendants knowingly presented or caused to be presented, the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

## IX.
## SECOND CLAIM FOR RELIEF
### FEDERAL FALSE CLAIMS ACT: MAKING OR USING
### FALSE RECORD OR STATEMENT TO CAUSE FALSE CLAIM TO BE
### PAID

63.     Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

64. As described above, throughout the statutory period, Defendants knowingly made false diagnoses in patients' charts and/or records, thereby increasing the patients' RAF scores, and caused the false risk adjustment data and claims to be submitted by the patients' MAPs to CMS, thereby causing CMS to make excessive Part C capitation payments.

65. Defendants used false risk adjustment data and records when they caused these data and claims to be submitted by the MAPs.

66. Defendants knowingly used false risk adjustment data and records material to false or fraudulent claims to CMS for payment, in violation of 31 U.S.C. § 3729(a)(1)(B).

67. The submission by Defendants of these false risk adjustment data and records caused the United States, through its agency CMS and through that agency's Medicare program, to pay out sums that it would not have paid if CMS had been made aware of the falsity of Defendants' records or statements.

68. Each submission of a false record or statement is a separate violation of the FCA.

69. By reason of the false or fraudulent risk adjustment data and records that Defendants knowingly submitted, the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

## X.
## THIRD CLAIM FOR RELIEF
## FEDERAL FALSE CLAIMS ACT: CONSPIRING TO SUBMIT FALSE CLAIMS

70.     Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

71.     As set forth above, Defendants conspired (a) to make false diagnoses in patients' charts and/or records, thereby increasing the patients' RAF scores; and (b) to cause the false risk adjustment data and claims to be submitted by Medicare Advantage plans to CMS, thereby causing CMS to make excessive Part C capitation payments.

72.     Defendants knowingly conspired to defraud the United States by getting false or fraudulent claims allowed or paid, in violation of 31 U.S.C. § 3729(a)(3) (1986), and conspired to commit violations of 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), in violation of 31 U.S.C. § 3729(a)(1)(C) (2009).

73.     By reason of the false or fraudulent risk adjustment data and claims that Defendants conspired to get allowed or paid, and/or by reason of their conspiracy to violate 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding the

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

## XI.
## FOURTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

74. Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

75. As set forth above, throughout the statutory period, Defendants knowingly made false diagnoses in patients' charts and/or records, thereby increasing the patients' RAF scores, and caused the false risk adjustment data and claims to be submitted by the patients' MAPs to CMS, thereby causing CMS to make excessive Part C capitation payments, and ultimately benefited from obtaining higher levels of reimbursement from MAPs for the care they provided to these patients.

76. The circumstances of Defendants' receipt of these monies from MAPs which received Part C capitation payments from United States, in an amount to be determined at trial, are such that, in equity and in good conscience, Defendants should not be permitted to retain such monies.

77. By reason of Defendants' unjust enrichment, Relator respectfully requests an order requiring Defendants to disgorge all monies Defendants earned as a result of the illicit scheme described herein.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## PRAYER FOR RELIEF

**WHEREFORE,** Relator respectfully requests that this Court enter judgment in Relator's favor and that of the United States, and against Defendants, granting the following:

(A)   An award to the United States for treble its damages, in an amount to be determined at trial, plus civil penalties for each false claim submitted in violation of the FCA;

(B)   An award to the United States for its costs pursuant to 31 U.S.C. § 3729(a)(3);

(C)   An award to Relator in the maximum amount permitted under 31 U.S.C. § 3730(d);

(D)   An award to Relator of the reasonable attorneys' fees, costs, and expenses he incurred in prosecuting this action;

(E)   An award to the United States and to Relator for their costs of court;

(F)   An award to the United States and to Relator for pre- and post-judgment interest at the rates permitted by law; and

(G)   An award of such other and further relief as this Court may deem to be just and proper.

[this space intentionally left blank]

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator

demands trial by jury on all questions of fact raised by the Complaint.

Dated: October 4, 2017

Respectfully submitted,

**JTB LAW GROUP, LLC**
**(Lead Attorneys)**

Jason T. Brown
(*pro hac vice* application forthcoming)
Patrick S. Almonrode
(*pro hac vice* application forthcoming)
155 2nd Street, Suite 4
Jersey City, NJ 07302
(877) 561-0000 (office)
(855) 582-5297 (fax)
*jtb@jtblawgroup.com*
*patalmonrode@jtblawgroup.com*

**Law Office of Mann & Elias**
**(Local Attorneys)**

*/s/ Imad Y. Elias*
Imad Y. Elias
**Los Angeles Office**
6100 Wilshire Blvd., Suite 1104
Los Angeles, CA 90048
(323) 857-9500 (office)
(323) 857-9525 (fax)
imad@mannelias.com

*Attorneys for Relator David Nutter, M.D.*

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2017, I caused a true copy of the Complaint in the matter captioned *United States of America ex rel. David Nutter, M.D. v. Sherif F. Khalil, M.D., et al.* to be served upon the following, along with written disclosure of substantially all material evidence and information possessed by Relator:

*by USPS Certified Mail, Return Receipt Requested, to*

The United States Attorney's Office
Central District of California
Civil Division
Attn: Civil Fraud Section
300 North Los Angeles Street, Suite 7516
Los Angeles, California 90012


Office of the Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Tony Teng
Law Clerk to Jason T. Brown, Esq.